**2022 UT 27**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SALT LAKE CITY CORPORATION,
*Appellant*,

*v.*

UTAH INLAND PORT AUTHORITY, STATE OF UTAH,
GOVERNOR SPENCER J. COX, in his official capacity,*
and ATTORNEY GENERAL SEAN D. REYES, in his official capacity,
*Appellees*.

No. 20200118
Heard: April 21, 2021
Filed June 29, 2022

On Direct Appeal

Third District, Salt Lake City
The Honorable James Blanch
No. 190902057

Attorneys:

Samantha J. Slark, Salt Lake City, for appellant

Evan S. Strassberg and Steven J. Joffee, Cottonwood Heights, for
appellee Utah Inland Port Authority

Melissa A. Holyoak, Solic. Gen., Stanford E. Purser, Deputy Solic.
Gen., David N. Wolf and Lance Sorensen, Asst. Att'ys Gen.,
Salt Lake City, for appellees State of Utah, Cox, and Reyes

Attorneys for amici curiae: Jayme L. Blakesley, Salt Lake City, for
Law Professors and International Municipal Lawyers Association;
Evangeline A.Z. Burbidge, San Francisco, California, and Michael D.
Zimmerman, Troy L. Booher, and Cameron Diehl, Salt Lake City, for
Utah League of Cities and Towns; J. Mark Ward, South Jordan, for
Beaver, Box Elder, Carbon, Davis, Duchesne, Emery, Garfield, Iron,
Juab, Kane, Millard, Piute, Sanpete, Sevier, Tooele, Uintah, Utah,
Washington, Wayne, and Weber Counties.

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court in which CHIEF JUSTICE DURRANT, JUSTICE PEARCE, JUSTICE PETERSEN and JUSTICE HAGEN joined.

JUSTICE HIMONAS participated in the oral argument in this case but retired before the court's opinion was finalized; JUSTICE DIANA HAGEN** participated in his stead.

---

\* Salt Lake City Corporation originally named Governor Gary Herbert as a party acting in his official capacity. The Court has substituted Governor Spencer Cox, acting in his official capacity, for Herbert under rule 38 of our rules of appellate procedure. Utah R. App. Proc. 38(d)(1) ("When a public officer is a party to an appeal or other proceeding in an official capacity and during its pendency dies, resigns or otherwise ceases to hold office, the action does not abate and the public officer's successor is automatically substituted as a party.").

\*\* JUSTICE DIANA HAGEN became a member of the Court on May 18, 2022, but sat as a visiting judge prior to her confirmation.

---

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 The Utah Inland Port Authority Act provides the legislative framework for developing an inland port in northwest Salt Lake City, West Valley City, and Magna. In so doing, the Act requires that these municipalities adopt specific zoning regulations and permissions favorable to developing the inland port. It also directs certain taxes collected within Salt Lake City's northwest quadrant, West Valley City, and Magna to the project.

¶2 Salt Lake City challenged four provisions of the Act, asserting that they violate the Uniform Operation of Laws and Ripper clauses of the Utah Constitution—by seizing control of the port area and tax revenue from it and from the two other municipalities. The district court rejected the City's claims, and the City filed this appeal.

¶3 We affirm the dismissal of the City's challenges to the zoning provisions. We hold that the challenged zoning provisions do not violate the Uniform Operation of Laws Clause because they are rationally related to a legitimate legislative purpose. And we conclude that the zoning provisions do not delegate municipal functions in violation of the Ripper Clause. As for the City's challenges related to the tax provisions, we do not reach the merits of those claims in today's decision. Recent amendments to the Act

may have rendered these claims moot. We accordingly issue an accompanying order for supplemental briefing. We direct the parties to submit supplemental briefing on (1) whether the City's challenges to the tax provisions are moot; and (2) if the challenges to these provisions are not moot, whether these provisions "interfere" with "municipal money."

I

¶4 An inland port is a logistics and distribution hub that receives, processes, and disseminates a range of goods through various modes of transportation.[1] Government leaders and business interests have long contemplated developing an inland port in Utah, but interest has waxed and waned over the years. Recently, however, various infrastructure developments in northwest Salt Lake City made an inland port feasible.[2] And potential stakeholders took notice. Several landowners approached the City with plans to develop an inland port on private land in the area. The state legislature eventually enacted the Utah Inland Port Authority Act in 2018. *See* UTAH CODE §§ 11-58-101 to 901 (2018). The Act identifies approximately 16,000 acres as "authority jurisdictional land"—including about one-fifth of the total geographic area of Salt Lake City (roughly 13,000 acres).[3]

---

[1] *See* Natalie Gochnour, *Salt Lake Inland Port Market Assessment*, UNIV. OF UTAH KEM C. GARDNER POL'Y INST. RESEARCH BRIEF 6 (Aug. 2016), https://gardner.utah.edu/wp-content/uploads/2016/10/IP-Brief-PRESS2.pdf (explaining that an inland port is "a site located away from traditional land, air, and coastal borders that contains a portfolio of multimodal transportation assets and the ability to allow global trade to be processed and altered by value-added services as goods move through the supply chain") [hereinafter *Inland Port Market Assessment*].

[2] Three developments renewed interest in an inland port: (1) Union Pacific Railroad built a hub for different modes of transportation close to Salt Lake City International Airport; (2) the airport began a multi-billion-dollar expansion; and (3) the Utah State Prison moved near the airport with an agreement to spend hundreds of millions of dollars on infrastructure necessary to support the prison—including roads, water, sewage, and electricity.

[3] The Act also identifies land in West Valley City and Magna. *See* UTAH CODE § 11-58-102 (2022), *amended by* H.B. 433 (2022 General Session); Electronic Shapefile Addendum to H.B. 2001 Utah Inland

(continued . . .)

The inland port's development is overseen by the Utah Inland Port Authority (UIPA). UTAH CODE § 11-58-202 (2022), *amended by* H.B. 443 (2022 General Session). UIPA is governed by an eight member board. *Id.* § 11-58-302(1)–(3). There are five voting members appointed by various state government officials, two nonvoting members with "expertise in transportation and logistics," and one more nonvoting member who is also a member of the Salt Lake City Council. *Id.*

¶5 Three sets of provisions of the Act are relevant to this appeal. First, the Act mandates that any municipality containing authority jurisdictional land "shall allow an inland port as a permitted or conditional use" under its zoning ordinances. *Id.* § 11-58-205(5)(a). Second, it provides that "[t]he transporting, unloading, loading, transfer, or temporary storage of natural resources may not be prohibited on the authority jurisdictional land." *Id.* § 11-58-205(6). Third, it identifies two primary sources of public funding for the inland port: (a) redirecting a percentage of property taxes collected on authority jurisdictional land to UIPA, *id.* § 11-58-601; and (b) distributing a portion of sales and use taxes collected on authority jurisdictional land to the port authority, *id.* § 11-58-602; *id.* § 59-12-205(2).

¶6 The City took issue with each of these provisions. And it sued UIPA and the State in 2019, asserting that the Act ran afoul of the Uniform Operation of Laws Clause and Ripper Clause of the Utah Constitution. The parties filed cross motions for summary judgment, and the district court granted UIPA's motion and dismissed the City's suit, holding that the Act did not violate either constitutional provision. Specifically, it found that the Act did not violate the Uniform Operation of Laws Clause since, under our decision in *Merrill v. Utah Labor Commission*, 2009 UT 26, 223 P.3d 1089, the provisions were reasonably related to a legitimate legislative purpose. It also determined that the Act did not violate the Ripper

Port Authority Amendments (2018 Second Special Session), UTAH STATE LEG., https://le.utah.gov/~2018S2/bills/static/HB2001.html (follow "Shape file" hyperlink); *see also* Interactive Map Addendum to H.B. 2001 Utah Inland Port Authority Amendments (2018 Second Special Session), UTAH STATE LEG., https://le.utah.gov/~2018S2/bills/static/HB2001.html (follow "Interactive Map" hyperlink).

Clause as the challenged provisions were directed mandates, not improper delegations of municipal power to UIPA.

¶7 The City has challenged the dismissal of these claims on this appeal. In assessing the viability of the City's arguments, we take account of a "strong presumption" of the constitutionality of state statutes. *Maxfield v. Herbert*, 2012 UT 44, ¶ 15, 284 P.3d 647 (citation and internal quotation marks omitted). We recognize the "[b]road deference" that is afforded to the legislature in "assessing the reasonableness of its classifications [under the Uniform Operation of Laws Clause] and their relationship to legitimate legislative purposes." *State v. Robinson*, 2011 UT 30, ¶ 23, 254 P.3d 183 (citations and internal quotation marks omitted). And we review the dismissal of the City's claims on summary judgment under a *de novo* standard of review. *See Rossi v. Univ. of Utah*, 2021 UT 43, ¶ 22, 496 P.3d 105.

II

¶8 The City claims that the district court erred in concluding that the challenged provisions of the Utah Inland Port Authority Act do not violate the state constitution. It asserts that the Act ran afoul of the Uniform Operation of Laws Clause by singling out Salt Lake City, West Valley City, and Magna, and treating them differently than other municipalities in the state. And it contends that the State has delegated municipal functions and interferes with municipal money in violation of the Ripper Clause.

¶9 We affirm the dismissal of the City's challenges to the zoning provisions. The City has failed to establish that the zoning provisions' disparate treatment of three municipalities is not rationally related to a legitimate legislative objective. And the Act does not delegate zoning or land-use authority to UIPA, so its zoning and land-use provisions do not run afoul of the Ripper Clause.

¶10 We stop short of reaching the merits of the City's challenges to the tax provisions, however, on the ground that recent amendments may have rendered these claims moot. Instead, we retain jurisdiction over these claims and ask the parties to submit supplemental briefs addressing the City's claims challenging sections 601 and 602 of the Act.

A. Uniform Operation of Laws Clause

¶11 The district court dismissed the City's Uniform Operation of Laws Clause claim, concluding that although the Act created classifications of municipalities, the classifications passed muster under rational basis review. The City challenges this holding. It

contends that the Act runs afoul of the Uniform Operation of Laws Clause in singling out three cities and treating them differently from all other municipalities in Utah. And it asserts that such disparate treatment is unwarranted because these three cities alone share the burden of a statewide project.

¶12 We affirm the dismissal of the City's challenges to the zoning provisions. The City has failed to carry its burden of showing that these provisions are not rationally related to a legitimate legislative purpose in violation of the Ripper Clause. We do not reach the merits of the City's Uniform Operation of Laws challenges to the tax provisions, however, on the ground that recent amendments to the Act may have rendered these claims moot. We retain jurisdiction over these claims and order the parties to submit supplemental briefing.

## 1. Zoning Regulations

¶13 The Uniform Operation of Laws Clause requires that "[a]ll laws of a general nature shall have uniform operation." UTAH CONST. art. I, § 24. The historical understanding of this clause is not in line with its modern interpretation. "Historically, uniform operation provisions were understood to be aimed not at legislative classification but at practical operation." *State v. Canton*, 2013 UT 44, ¶ 34, 308 P.3d 517 (emphases omitted). Rather than being "viewed as a limit on the sorts of classifications that a legislative body could draw in the first instance," uniform operation clauses originally were seen as "rule[s] of uniformity in the actual application of such classifications." *Id.* Legislative classifications were thus viewed as permissible as long as no one was exempted from them. *See id.* ¶ 34 & n.7 (explaining that uniform operation of laws clauses were meant to protect against the "creation of special privileges or exemptions" instead of functioning as "miniature equal protection clauses" (citation and internal quotation marks omitted)).

¶14 The modern formulation has drifted from this understanding. Our case law has "treat[ed] the requirement of uniform operation as a state-law counterpart to the federal Equal Protection Clause." *Id.* ¶ 35. We have set out a three-step test for determining whether a law meets this requirement. We ask "(1) whether the statute creates any classifications"; "(2) whether the classifications impose any disparate treatment on persons similarly situated"; and (3) if so, "whether the legislature had any reasonable objective that warrants the disparity." *Count My Vote, Inc. v. Cox*, 2019 UT 60, ¶ 29, 452 P.3d 1109 (citation and internal quotation marks omitted).

¶15 We begin by asking whether the zoning provisions of the Act create a classification. While section 205 does not mention any municipalities by name, it does create two classes: (1) municipalities that contain "authority jurisdictional land" and are required to have certain zoning regulations and (2) those that do not contain "authority jurisdictional land" and may choose to permit such zoning and land uses. UTAH CODE §§ 11-58-102(2), -205(5)(a), -205(6). Salt Lake City, West Valley City, and Magna are the only municipalities containing authority jurisdictional land. So the Act creates a classification—in distinguishing between one class consisting of these three municipalities and a second consisting of all other municipalities in the state.

¶16 We next ask whether the zoning provisions impose disparate treatment on similarly situated entities. Clearly there is disparate treatment—only Salt Lake City, West Valley City, and Magna fall within the Act's classification for municipalities with "authority jurisdictional land" and are subject to the statute's zoning requirements. *See id.* § 11-58-205(5) (requiring cities containing authority jurisdictional land to adopt zoning ordinances that "allow an inland port"); *id.* § 11-58-205(6) (barring such cities from prohibiting "[t]he transporting, unloading, loading, transfer, or temporary storage of natural resources" on the authority jurisdictional land).

¶17 We nonetheless conclude that subsections 205(5) and 205(6) withstand scrutiny under our three-part test. We assume without deciding that under the second step Salt Lake City, West Valley City, and Magna are "similarly situated" to all other municipalities in the state. *See Count My Vote, Inc.*, 2019 UT 60, ¶ 39. And we base our decision on the third step of the uniform operation analysis—on the conclusion that the legislature had a "reasonable objective" warranting the disparity in treatment under the Act. *See id.* ¶ 29 (citation omitted and internal quotation marks omitted); *supra* ¶ 14. Our final inquiry in the uniform operation test is subject only to "rational basis" review, since the legislature's classification does not involve a suspect classification or implicate a fundamental right. *See Taylorsville City v. Mitchell*, 2020 UT 26, ¶ 37, 466 P.3d 148 (citation omitted). And the City has failed to carry its burden of showing that the statute's disparate treatment is not rationally related to a legitimate legislative purpose. *See id.* ¶ 43.

¶18 The Act's "statewide public purpose" is "to maximize the long-term economic and other benefit for the state." UTAH CODE § 11-58-201(3)(a). Economic studies underlying the Act projected that

an inland port could create thousands of jobs, develop natural resource extraction industries, and make Utah a bigger player in the global economy.[4] These are legitimate objectives. And the classification is reasonably related to furthering them—by clearing the way for the port by requiring these cities to "allow an inland port" and preventing them from prohibiting activities necessary to operate it. UTAH CODE §§ 11-58-205(5), -205(6).

¶19 We uphold the constitutionality of the zoning provisions on these grounds. We hold that the City has failed to carry its burden of establishing that subsections 205(5) and 205(6) of the Act run afoul of our three-part test on uniform operation.

2. Tax Provisions

¶20 The legislature amended the Act after oral argument in this court. And the 2022 amendments add a layer of classification to the tax provisions—in designating Salt Lake City as the "primary municipality," establishing different tax treatment for "exempt area[s]" within the City, and granting it the power to enter into certain agreements with UIPA that alter the percentage of redirected funds and designate their uses.[5] The amendments also grant the City the power to agree—or not—to the redirection of any property tax funds beginning in 2023. UTAH CODE §§ 11-58-601 to 604; *id.* § 11-58-601(9) ("Notwithstanding any other provision of this chapter, beginning with the first tax year that begins on or after January 1,

---

[4] *See Inland Port Market Assessment*, *supra* note 1, at 6; CAMBRIDGE SYSTEMATICS, INC & GLOB. LOGISTICS DEV. PARTNERS, INC, UTAH INLAND PORT – FEASIBILITY ANALYSIS (2017), https:// inlandportauthority.utah.gov/wp-content/uploads/UIP-Feasibility-Analysis.pdf [hereinafter CAMBRIDGE SYSTEMATICS]. *See generally* SALT LAKE CNTY. DEP'T OF TRANSP., HOUS., & ECON. DEV., SALT LAKE COUNTY GLOBAL TRADE & INVESTMENT PLAN (2017), https://inlandportauthority.utah.gov/wp-content/uploads/global-trade-investment-plan1.pdf (developed in cooperation with the Brookings Institution and JP Morgan Chase's joint Global Cities Initiative, although all conclusions and recommendations are those of Salt Lake County).

[5] UTAH CODE §§ 11-58-601(1)(b), −601(1)(h), -601(6), -604(2) to -604(6); Utah Inland Port Authority Amendments, H.B. 443 (2022 General Session) (effective Mar. 21, 2022). We cite the most recent version of the statute unless stated otherwise.

2023, the authority may not use the portion of property tax differential generated by a property tax levied by a primary municipality on the exempt area unless the primary municipality . . . entered into an agreement [with UIPA].") These statutory changes may moot the City's claims under the Act's tax provisions.[6]

¶21 A case becomes moot when the "controversy" before the court is "eliminated," "rendering the relief requested impossible or of no legal effect." *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 14, 289 P.3d 582 (citation and internal quotation marks omitted). This may occur as a result of changes in the practical or legal relationship between the parties—as by repeal or amendment of the law under review. Such changes may deprive the court of the ability "to order a remedy that will have a meaningful impact on the practical positions of the parties." *Id.* ¶ 24. And that could render the case moot—by making our disposition of the claims that were preserved in the district court and argued on appeal "purely advisory." *Id.* ¶ 15.

¶22 These concerns may be implicated here. The City has requested only forward-looking relief from this court—in asking us to strike down the tax provisions of the Act as unconstitutional. But the City's claim and arguments are aimed at a version of the statute—and a classification scheme—that is no longer in effect. The 2022 amendments changed the classification of the City by granting the City special tax treatment and negotiating power with UIPA. UTAH CODE § 11-58-601, -601(9), -604; *supra* ¶ 20. So a decision by this court about the constitutionality of the Act's old classification may not "have a meaningful impact on the practical positions of the parties" under the amended statute. *Utah Transit Auth.*, 2012 UT 75, ¶ 24. Our ruling, in other words, may have "no legal effect." *Id.* ¶ 14; *see also In re. J.P.*, 648 P.2d 1364, 1370 (Utah 1982) (holding that an

---

[6] Neither party has filed a suggestion of mootness. *See* UTAH R. APP. P. 37(a) ("Any party aware of circumstances that render moot one or more of the issues presented for review must promptly file a 'suggestion of mootness' in the form of a motion under Rule 23."). The court, however, "may also raise the issue of mootness sua sponte to further a core judicial policy of limiting the scope of its power to issues in controversy." *In re Adoption of L.O.*, 2012 UT 23, ¶ 7, 282 P.3d 977 (citations and internal quotation marks omitted).

amendment to a statute moots an appeal "when the amendment actually prevents the requested judicial relief from affecting the rights of the litigants" (citation omitted)).

¶23 For this reason we decline to reach the merits of these claims in today's decision. Instead we issue an accompanying order requiring the parties to submit supplemental briefing on whether the City's uniform operation challenges to sections 601 and 602 are moot and should be dismissed—without prejudice to the City's right to refile a challenge to the constitutionality of the amended provisions of the Act.

## B. Ripper Clause

¶24 The district court also rejected the City's Ripper Clause claim. It held (1) that the challenged provisions were not delegations of municipal power but direct legislative mandates; and (2) that even if the statute delegated power, it did not implicate any municipal function in light of the statewide interests at stake.

¶25 The City challenges these conclusions, asserting that the Act effects an unconstitutional delegation of municipal power in requiring inland-port-friendly zoning ordinances and in prohibiting interference with the transportation and storage of natural resources. *See* UTAH CODE § 11-58-205(5)(a) (requiring regulated municipalities to adopt zoning ordinances that "allow an inland port as a permitted or conditional use" on authority jurisdictional land within its boundaries); *id.* § 11-58-205(6) (barring municipalities from prohibiting the "transporting, unloading, loading, transfer, or temporary storage of natural resources" on authority jurisdictional land). It also asserts that the funding provisions of the Act interfere with municipal money. *See id.* § 11-58-601 (requiring the redirection of a percentage of property taxes collected on authority jurisdictional land to UIPA); *id.* § 11-58-602 and § 59-12-205(2) (requiring the distribution of a portion of sales and use taxes collected on authority jurisdictional land to the port authority).

¶26 We affirm the dismissal of the City's challenges to the zoning mandates under the controlling terms of the Ripper Clause. But we do not reach the merits of the City's Ripper Clause challenges to the tax provisions. Instead we retain jurisdiction over these claims and order the parties to submit supplemental briefing. We direct the parties to address whether the 2022 amendments to the Act moot the City's section 601 and 602 claims under the Ripper Clause. And we ask the parties to provide additional briefing on the issue of whether the provisions "interfere" with "municipal money."

## 1. Zoning Regulations

¶27 The Ripper Clause provides that

> [t]he Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions.

UTAH CONST. art. VI, § 28. This provision has nothing to say about the propriety of a legislative mandate directed at a municipality. It speaks only to the delegation of authority—in prohibiting the legislature from delegating the "power to make, supervise or interfere with any municipal improvement, money, property or effects" or delegating the power "to levy taxes, to select a capitol site, or to perform any municipal functions." *Id.*

¶28 The Act's zoning provisions withstand scrutiny on the ground that they do not delegate power to any outside group or entity. To "delegate" is to "[e]ntrust (a task or responsibility) to another person, typically one who is less senior than oneself."[7] Here the legislature is not "entrusting" UIPA with the task or responsibility of enacting certain zoning ordinances. The Act requires that Salt Lake City, West Valley City, and Magna "allow an inland port," UTAH CODE § 11-58-205(5)(a), and prohibits them from outlawing the "transporting, unloading, loading, transfer, or temporary storage of natural resources" on authority jurisdictional land, *id.* § 11-58-205(6). These are legislative mandates directed at municipalities. So under the plain language of the Ripper Clause, the zoning regulations are constitutional. We uphold the zoning use and non-interference provisions of the Act on this basis.[8]

---

[7] *See Delegate*, LEXICO, https://www.lexico.com/definition/delegate (last visited June 10, 2022); *see also Delegate*, DICTIONARY.COM, https://www.dictionary.com/browse/delegate (last visited June 10, 2022) (defining "delegate" as "to commit (powers, functions, etc.) to another as agent or deputy").

[8] This narrow holding makes it unnecessary for us to reach other arguments pressed by the City on appeal. We need not and do not articulate a basis for deciding whether a given activity qualifies as

(continued . . .)

## 2. Tax Provisions

¶29 As noted above, the state legislature amended the Act after we held oral argument in this case. *Supra* ¶ 20 & n.5. The amendments make substantive changes to the funding provisions, including adding two related sections. *See* UTAH CODE § 11-58-601 to 604. It appears to us that these amendments may moot the City's Ripper Clause claims as to the tax provisions.

¶30 As explained above, statutory revisions may render a case moot where they make it impossible for us "to order a remedy that will have a meaningful impact on the practical positions of the parties." *See supra* ¶ 21. And, as with the zoning provisions, the City challenges a version of the statute that is no longer in effect. The 2022 amendments make substantial changes to the challenged tax provisions of the Act. They recognize the City as the "primary municipality" and grant it the power to enter into certain agreements with UIPA that alter the percentage of redirected funds and designate their uses.[9] They also grant the City the power to agree — or not — to the redirection of any property tax funds beginning in 2023. UTAH CODE §§ 11-58-601 to 604; *id.* § 11-58-601(9) ("Notwithstanding any other provision of this chapter, beginning with the first tax year that begins on or after January 1, 2023, the authority may not use the portion of property tax differential generated by a property tax levied by a primary municipality on the exempt area unless the primary municipality . . . entered into an agreement [with UIPA]."). And these amendments may alter the effect of our disposition of the City's Ripper Clause challenge to the Act's pre-amendment tax provisions — since, for example, the City now has a voice in the use or allocation of certain tax funds.

---

"municipal," or for assessing whether a given entity amounts to a "special commission, private corporation or association." Our case law is more than a little muddled on these questions. *See Tribe v. Salt Lake City Corp.*, 540 P.2d 499 (Utah 1975); *Salt Lake City v. Int'l Ass'n of Firefighters, Locals 1645, 593, 1654 & 2064*, 563 P.2d 786, 788 (Utah 1977); *City of West Jordan v. Utah State Ret. Bd.*, 767 P.2d 530 (Utah 1988). And we leave for another day the matter of how to reconcile the disparate strands in our case law with the controlling text of the Utah Constitution.

[9] UTAH CODE §§ 11-58-601(1)(b), -601(1)(h), -601(6), -604(2) to 604(6); Utah Inland Port Authority Amendments, H.B. 443 (2022 General Session) (effective Mar. 21, 2022).

¶31 For these (and perhaps other) reasons, a decision by this court about redirection of tax revenue under the pre-amendment version of the Act may not "have a meaningful impact on the practical positions of the parties." *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 24, 289 P.3d 582. In other words, our ruling about the earlier tax scheme may have "no legal effect" under current law. *See id.* ¶ 14. With this in mind, we ask the parties to submit supplemental briefs on whether the 2022 amendments moot the City's section 601 and 602 claims under the Ripper Clause, on points set forth in a supplemental briefing order issued herewith.

¶32 We acknowledge the possibility that our concerns about mootness may be alleviated by the parties' briefing. And we ask for supplemental briefing on the merits in light of that possibility.

¶33 Specifically, we ask the parties to present supplemental briefing on the question whether the tax revenue at issue is "municipal money." The City claims that the tax provisions violate the Ripper Clause because they "delegate" the power to "interfere" with "municipal money." But this claim implicates some significant nuances that have been briefed by the parties only in passing. We highlight some specific dimensions of these nuances in our supplemental briefing order. And we note that we will reach the merits only if we decide that the City's claims are not moot.

### III

¶34 We affirm the dismissal of the City's challenges to the unamended zoning provisions of the Utah Inland Port Authority Act. But we decline to reach the City's challenges to the tax provisions of the Act. Instead we ask for supplemental briefing on the mootness and merits questions noted above.

―――――――――