*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 30**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KYLE MATHEWS, DIANE HANEY, and KATHLEEN MALLIS,
*Appellants,*

*v.*

TOOELE COUNTY and SPENCER COX, in his official capacity as the
Governor of Utah,
*Appellees.*

No. 20240274
Heard January 15, 2025
Supplemental Briefing Received March 11, 2025
Filed August 7, 2025

On Direct Appeal

Third District Court, Tooele County
The Honorable L. Douglas Hogan
No. 200301717

Attorneys:

Janet M. Conway, Wanship, for appellants

Nathanael J. Mitchell, Salt Lake City, for appellee Tooele County

Derek E. Brown, Att'y Gen., Andrew Dymek, Asst. Solic. Gen.,
Salt Lake City, for appellee Spencer Cox

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE HAGEN, JUSTICE POHLMAN, and
JUDGE HOWELL joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE PEARCE does not
participate herein; DISTRICT COURT JUDGE SHAWN R. HOWELL sat.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1    This case grew out of a citizen-led effort to refer a Tooele County zoning ordinance (Ordinance) to the voters of Tooele County. When the site-specific Ordinance was enacted, it applied to an agricultural parcel of property (Property) in an unincorporated area of Tooele County called Erda. The Ordinance rezoned the Property from agricultural to planned-community zoning, which allowed the Property to be developed. The referendum sponsors (Sponsors) sought to preserve the agricultural nature of the Property by repealing the Ordinance, with its new zoning designation. But the County Clerk rejected the referendum petition, determining that the Sponsors had not gathered enough signatures to put the measure on the ballot.

¶2    The Sponsors filed suit against the County and the Governor in the hope of getting the measure before the voters of Tooele County. Around that time, the Ordinance went into effect. And while the lawsuit progressed, the area in which the Property is located became part of the newly incorporated City of Erda. Thus, during the litigation, land-use authority over the Property changed hands from Tooele County to the City of Erda.

¶3    The Sponsors ultimately lost in the district court. The court ruled that the County Clerk had correctly determined that the Sponsors had not obtained the requisite number of signatures to place the referendum on the ballot.

¶4    The Sponsors appeal that decision to us. But we are prevented from reaching the merits of the issues they raise because we conclude that the case is moot. Even if the Sponsors prevailed in this case and obtained the remedy they seek—referring the Ordinance to Tooele County voters in a future election—and even if the referendum were successful and the Ordinance were repealed, this would not impact the existing zoning of the Property because it is no longer within Tooele County's zoning authority. Instead, Erda can enact its own zoning regulations for the Property. And indeed, it has done so for more than three years. We conclude that this change deprives this court of the ability to provide the Sponsors with meaningful relief. Accordingly, we dismiss the appeal as moot.

## BACKGROUND[1]

¶5    This case centers on a Tooele County zoning ordinance governing property located in a then-unincorporated area of Tooele County. Enacted in September 2020, the Ordinance rezoned the Property from agricultural to planned-community zoning, allowing for development of the Property.

¶6    A week after the County passed the Ordinance, a group of residents filed an application to begin the process of repealing it by referendum. *See* UTAH CODE §§ 20A-7-601 to -613 (2020) (outlining procedures for local referenda).[2] As part of that process, the Sponsors needed to gather signatures from residents. *See id.* § 20A-7-601(2)–(4) (2020) (establishing signature requirements for local referenda). Before they started doing so, the Tooele County Clerk informed the Sponsors that she intended to impose a sixteen-percent signature threshold on their referendum petition. *See id.* § 20A-7-601(3)(a) (2020) (imposing sixteen-percent signature threshold for certain referendum petitions). The Sponsors objected to the Clerk's interpretation of the law but nevertheless began gathering signatures.

¶7    The signature-gathering window opened October 9, 2020 and closed November 23, 2020, overlapping with the COVID-19 pandemic. About two weeks before the window closed, the Governor issued an executive order that imposed temporary restrictions in response to the pandemic. *See* Utah Exec. Order 2020-73 (Nov. 8, 2020). According to the Sponsors, the executive order impeded their ability to gather signatures for their petition. To overcome these perceived challenges, the Sponsors contacted the offices of the Lieutenant Governor and Governor, requesting permission to use electronic signatures—in lieu of signatures gathered in person—for the petition. The Sponsors stated that the

---

[1] When reviewing a district court's decisions on both a motion for summary judgment and a motion for judgment on the pleadings, we view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Burton v. Chen*, 2023 UT 14, ¶ 5 n.2, 532 P.3d 1005 (reviewing grant of motion for summary judgment); *Hammons v. Weber Cnty.*, 2018 UT 16, ¶ 9, 417 P.3d 624 (reviewing grant of motion for judgment on the pleadings). We recite the facts accordingly.

[2] The parties agree that the September 2020 version of the Utah Code applies to the case. We cite the version in effect at that time.

"Governor's COVID restrictions ma[d]e it impossible . . . to freely obtain signatures for" the referendum, and they pointed out that a prior executive order had allowed referendum sponsors to "distribute and gather referendum packets and physically signed signature sheets electronically, including by fax or e-mail."

¶8    The Sponsors' entreaties were denied. So they continued collecting signatures in person, ultimately compiling 3,376 valid signatures. But this was short of the number required to meet the sixteen-percent threshold. The County Clerk informed the Sponsors that their referendum petition failed because they had not gathered enough signatures. *See* UTAH CODE § 20A-7-607(2)(c) (2020) (instructing local clerk on when to mark a referendum packet "insufficient"). As a result, the County Clerk declined to place the referendum measure on the ballot.

¶9    Soon after, the Sponsors sued Tooele County and the Governor in the district court, invoking a statutory right of action that authorizes voters to apply for an extraordinary writ compelling a local clerk to accept and file a referendum petition. *See id.* § 20A-7-607(4)(a) (2020) ("If the local clerk refuses to accept and file any referendum petition, any voter may apply to a court for an extraordinary writ to compel the local clerk to do so within 10 days after the refusal.").

¶10  In their claims against the County, the Sponsors alleged that the County Clerk was wrong to impose the sixteen-percent signature threshold. They argued that, properly viewed, the referendum petition was subject to a nine-and-a-half-percent signature threshold. *See id.* § 20A-7-601(2)(e) (2020) (imposing nine-and-a-half-percent signature threshold for certain referendum petitions). Because the Sponsors collected enough signatures to meet the lower threshold, they asked the district court to declare the petition legally sufficient and order the County Clerk to place the referendum measure on the ballot.

¶11  In their claims against the Governor, the Sponsors alleged that the Governor's refusal to allow for electronic signature gathering violated their rights under the United States Constitution and the Utah Constitution. The Governor's refusal, they contended, rendered "[c]ertain provisions of Utah's election code . . . unconstitutional as applied to [the Sponsors] because of the COVID-19 pandemic and the State's ensuing response." For relief, the Sponsors sought a declaration that the Governor's actions violated their constitutional rights.

¶12 Near the time the lawsuit was initiated, the Ordinance took effect.[3] Additionally, just under a year later, the previously unincorporated area in which the Property is located became part of the City of Erda. The Lieutenant Governor certified the incorporation of the new city in January 2022.

¶13 Meanwhile, in the ongoing litigation, the County moved for summary judgment on the claims against it. And the changed status of the Property—from being part of unincorporated Tooele County to part of the City of Erda—informed one of the County's arguments. In addition to arguing on the merits that the County Clerk had correctly determined the Sponsors had not met the required signature threshold, the County also argued that the Sponsors lacked standing to sue. In support of this argument, the County alerted the district court to the incorporation of the City of Erda and argued that this impacted the court's ability to redress the Sponsors' claimed injuries. The County argued that Erda's incorporation was relevant because the Property was no longer within the County's land-use authority. Instead, it was within the land-use jurisdiction of Erda. And the County noted that Erda had begun to exercise its land-use authority by enacting ordinances that affected the Property and its zoning. Given these developments, the County contended that the Sponsors' requested relief—a referendum on the Tooele County Ordinance—was unlikely to redress their claimed injury; so the Sponsors no longer had standing to litigate their claims.

¶14 The district court granted summary judgment in the County's favor. In its order, the court noted the County's challenge to the Sponsors' standing but declined to resolve it. The court determined that even if the Sponsors had standing, their claims failed as a matter of law because the County Clerk properly imposed the sixteen-percent signature threshold, which the Sponsors conceded they had not satisfied.

---

[3] The Sponsors assert that the Ordinance's effective date was "forestalled" during the referendum process but that the Ordinance took effect the day after the County Clerk rejected their referendum petition, on December 1, 2020. The County notes that the Ordinance was to take effect when it was published, which it says occurred on February 25, 2021. Because this discrepancy does not alter our analysis, we do not resolve it.

¶15 The Governor then moved for judgment on the pleadings, arguing that his actions did not violate the Sponsors' constitutional rights. The district court agreed and granted the motion, and the Sponsors appealed.

## STANDARD OF REVIEW

¶16 The Sponsors argue that the district court's ruling was legally incorrect, and they raise a number of issues in support of that contention. However, because we determine this case is moot, we do not reach those issues on the merits. Instead, we explain our conclusion that the case has become moot. Because the district court did not rule on this issue, "our decision is not governed by any standard of review, and we decide the matter as a question of law in the first instance." *Grewal v. Junction Mkt. Fairview, L.C.*, 2024 UT 20, ¶ 12, 554 P.3d 863 (cleaned up).

## ANALYSIS

¶17 The Sponsors appeal the district court's dismissal of their case. In response, the County and the Governor address the merits of the Sponsors' arguments, and the County also argues that the Sponsors lack standing to pursue their claims because they can no longer obtain effective relief. We agree with the County on the latter point. However, this presents an issue of mootness, not standing.

¶18 The County has argued, both in the district court and on appeal, that the Sponsors lack standing to pursue their claims. The County observes that when Erda was incorporated, Tooele County lost land-use authority over the Property and that authority was transferred to the City of Erda. *See* UTAH CODE § 17-27a-102(1)(b) (2020) (authorizing counties to "enact all ordinances, resolutions, and rules" and to "enter into other forms of land use controls and development agreements that the county considers necessary or appropriate for the use and development of land *within the unincorporated area of the county*" (emphasis added)). The County asserts that this deprives the Sponsors of standing to assert their claims.

¶19 The County does not question that the Sponsors meet the first two requirements of traditional standing—injury and causation. *See Natalie R. v. State*, 2025 UT 5, ¶ 17 n.4, 567 P.3d 550 ("Simply put, traditional standing requires a claimant to show injury, causation, and redressability." (cleaned up)). But the County argues that the courts can no longer redress the Sponsors'

claimed injuries now that Erda, not Tooele County, oversees the Property's zoning. *See id.* ¶ 30 ("[P]laintiffs cannot establish standing unless the requested relief is substantially likely to redress the injury claimed." (cleaned up)). The County maintains that even if the court ordered the referendum measure to be placed on the ballot, and even if the measure successfully repealed the Ordinance, it is unlikely that the repeal "would have retroactive and meaningful effect" given that Tooele County's ordinances no longer govern the Property.

¶20 We agree. But here, that presents a problem of mootness rather than standing.[4] Both standing and mootness concern, in part, whether the court can provide adequate relief. *See id.* ("[P]laintiffs cannot establish standing unless the requested relief is substantially likely to redress the injury claimed." (cleaned up)); *Grewal v. Junction Mkt. Fairview, L.C.*, 2024 UT 20, ¶ 25, 554 P.3d 863 ("A case is moot when the relief requested is rendered impossible or of no legal effect." (cleaned up)). But the two doctrines differ in other ways, including timing. A party's standing is generally "determined as of the time the action is brought." *Cedar Mountain Env't, Inc. v. Tooele Cnty. ex rel. Tooele Cnty. Comm'n*, 2009 UT 48, ¶ 10, 214 P.3d 95 (cleaned up), *abrogated on other grounds by McKitrick v. Gibson*, 2021 UT 48, 496 P.3d 147. A case may "become[] moot," however, at any point if a change in circumstances eliminates the legal controversy between the parties. *Salt Lake City Corp. v. Utah Inland Port Auth.*, 2022 UT 27, ¶ 21, 524 P.3d 573.

¶21 "A case becomes moot when the controversy is eliminated, thereby rendering the relief requested impossible or of no legal

---

[4] At oral argument, we asked the parties whether the County's jurisdictional challenge was better characterized as one of mootness rather than standing. We note that, although the County did not invoke the doctrine of mootness in its initial briefing, "courts have a sua sponte obligation to carefully consider the propriety of their own jurisdiction." *Midwest Fam. Mut. Ins. v. Hinton*, 2025 UT 4, ¶ 25, 567 P.3d 524 (cleaned up). The parties acknowledged at oral argument that because the County's challenge relates to a change in circumstances that arose after the Sponsors brought the action—Erda's incorporation and subsequent exercise of land-use authority—the challenge implicates mootness, not standing. Because the parties had not briefed the issue, we requested supplemental briefing so they would have an opportunity to do so.

effect, or in other words when there remains no meaningful relief that this court could offer, such that anything we might say about the issues would be purely advisory." *Teamsters Loc. 222 v. Utah Transit Auth.*, 2018 UT 33, ¶ 9, 424 P.3d 892 (cleaned up). To determine whether this case is moot, then, we must ask whether the court can provide the Sponsors with meaningful relief now that the Property falls under Erda's land-use authority. If no such relief remains, then the case is moot and must be dismissed.

¶22 The Sponsors seek three forms of relief aimed at one goal. They ask the district court to: 1) declare their referendum petition "legally sufficient," 2) declare that the Governor's actions violated their constitutional rights, and 3) order the County Clerk to accept the petition and place the referendum measure on the ballot in a future election. The Sponsors ultimately hope to repeal the Ordinance through a successful referendum vote, thereby removing Tooele County's planned-community zoning from the Property and reinstating its prior agricultural zoning.

¶23 But the Sponsors have not explained how this is legally possible under the current circumstances. The Sponsors do not dispute that Erda was incorporated or that the Property is now within its boundaries. And they do not dispute that Erda now holds the authority to regulate the Property's zoning. To the contrary, they recognize that Erda has exercised that authority. Indeed, the parties recount that in the months following Erda's January 2022 incorporation, Erda enacted a slate of ordinances, several of which affect the Property and its zoning.[5] And although the precise details and legal effects of those ordinances are not before us, one thing is clear: for over three years, Erda—not Tooele County—has been the entity regulating the Property.

¶24 Thus, the Sponsors have reached an obstacle in their quest to return the Property to an agricultural zoning designation by

---

[5] *See* Erda, Utah, Ordinance No. 22-07 (Jan. 27, 2022) (adopting Tooele County Code as it "existed on January 5, 2022," including the "zoning map . . . covering areas within the City"); Erda, Utah, Ordinance No. 22-09 (Feb. 17, 2022) (readopting Tooele County Code but changing the Property's zoning to agricultural); Erda, Utah, Ordinance No. 22-10 (Feb. 17, 2022) (reinstating planned-community zoning for the Property); Erda, Utah, Ordinance No. 22-29 (Jul. 28, 2022) (adopting comprehensive land-use code and zoning map).

referring and repealing the Tooele County Ordinance. It is unclear how Tooele County voters could effectively change the zoning designation of land that is now within the City of Erda by repealing the Ordinance, which no longer governs that land. The Sponsors have not offered a legal basis for their assumption that this is possible. Nor do they explain how repealing the Ordinance would affect the subsequent zoning regulations on the Property that Erda has enacted since its incorporation.

¶25 Even so, the Sponsors offer one way in which they believe the court could still provide them with effective relief. They contend the case would not be moot if repealing the Ordinance would extinguish any vested rights that a specific developer might have accrued in the planned-community zoning designation. As described in our caselaw, the vested-rights doctrine dictates when an applicant for a subdivision approval or building permit may rely on existing zoning ordinances. *See W. Land Equities, Inc. v. City of Logan*, 617 P.2d 388, 396 (Utah 1980). Such an applicant is "entitled to a building permit or subdivision approval" if the proposal "meets the zoning requirements in existence at the time" of the application and the applicant "proceeds with reasonable diligence, absent a compelling, countervailing public interest." *Id.* However, an applicant may not rely on existing zoning ordinances if "a city or county has initiated proceedings to amend its zoning ordinances." *Id.*

¶26 The Sponsors assert that the developer has appeared at Erda City Council meetings claiming to be entitled to vested development rights and has threatened litigation against Erda. According to the Sponsors, Erda has concluded that it must honor those claimed rights "unless the Ordinance is repealed by referendum."[6]

¶27 The Sponsors assert that to determine whether this case is moot, the issue of whether the developer has vested rights in the planned-community designation must be resolved in this litigation.

---

[6] Erda's conclusion was apparently based in part on a provision of the Utah Municipal Land Use, Development, and Management Act, under which "[a] subsequent incorporation of a municipality or a petition that proposes the incorporation of a municipality does not affect a land use application approved by a county." UTAH CODE § 10-9a-509(d). We express no opinion on whether Erda's conclusion is legally correct.

They reason that if the developer does not have vested rights, then this case can be dismissed as moot. They acknowledge that in those circumstances, their remedy would be the political process—in other words, attempting to persuade the Erda City Council to adopt agricultural use zoning over the Property. But if the developer does have vested rights, then the Sponsors assert that the case is not moot. The premise of their argument is that repealing the Tooele County Ordinance through a referendum would extinguish the developer's vested rights. The Sponsors ask that we remand the case so the district court can conduct additional factfinding on the vested rights question.

¶28 There are two problems with the Sponsors' reasoning. First, neither the developer nor Erda is a party here, and the issue of whether the nonparty developer has vested rights in the planned-community zoning designation is not before us on appeal. So there is no option for us or the district court to address that question in this litigation.

¶29 Second, even assuming for the sake of argument that the developer has accrued vested rights in the County zoning designation,[7] the Sponsors have not explained how a future successful referendum repealing the Ordinance would extinguish those vested rights. The parties agree that the Ordinance took effect sometime between December 2020 and February 2021.[8] Although Utah law creates a process for preventing a law or ordinance from taking effect until the referendum process is completed—stopping a law from going into effect if "a referendum petition has been declared sufficient"—the Sponsors concede that did not happen here, as the County Clerk did not declare the Sponsors' petition "sufficient." *See* UTAH CODE § 20A-7-601(5)(b) (2020) ("[W]hen a referendum petition has been declared sufficient, the local law that is the subject of the petition does not take effect unless and until the local law is approved by a vote of the people."); UTAH CONST. art. VI, § 1(2)(b)(ii) ("The legal voters of any county, city, or town . . . may . . . require any law or ordinance passed by the law making body of the county, city, or town to be submitted to the voters thereof, as provided by statute, before the law or ordinance may

---

[7] Nothing we have said in this opinion should be construed to comment in any way on whether the developer has vested rights in the planned-community zoning designation.

[8] *See supra* ¶ 12 n.3.

take effect."). Nor does the record reflect that the Sponsors ever asked the district court to stop the Ordinance from taking effect until the court resolved the case. So, the Ordinance became effective by February 2021 at the latest.

¶30 If the developer accrued vested rights in the Ordinance's zoning designation sometime after February 2021, the Sponsors seem to assume that a future successful referendum would strip the developer of these rights. But they make no legal argument in support of that assumption. If the referendum would repeal the Ordinance prospectively only, the Sponsors have not explained why any vested rights would not remain intact.

¶31 And a successful referendum would not have retroactive effect. If a local law is successfully challenged by referendum, the law "is repealed as of the date of the election." UTAH CODE § 20A-7-611(1) (2025). So here, if the court gave the Sponsors the relief they request, declaring the referendum petition legally sufficient and ordering the County Clerk to put the referendum measure on the ballot, a successful referendum vote would repeal the Ordinance "as of the date of the election." *Id.* The Sponsors have not explained how the future prospective repeal of the Ordinance would have any effect on the developer's vested rights—assuming it has any.

¶32 In sum, the Sponsors have not explained how the court can provide them with meaningful relief, even if we grant them the remedy they seek. Accordingly, we conclude that the case is moot.

## CONCLUSION

¶33 Tooele County no longer holds land-use authority over the Property. Erda now has that authority, which it has exercised since 2022. And the Sponsors have not explained how a referendum on the Tooele County Ordinance could have any impact on the current zoning of the Property. Although they posit that the case might not be moot because a referendum could extinguish any vested development rights that the Ordinance might have sparked, they have provided no legal basis for that premise. Thus, this court has no ability to provide legally effective relief to the Sponsors, which renders this case moot. We dismiss the appeal.

———————————

11