## LYON et al. v. BATEMAN

No. 7493. Decided March 7, 1951. (228 P. 2d 818.)

436

See 1 C. J. S. Actions, Sec. 18. Tax questions as subject for declaratory judgments, see note 11 A. L. R. 2d 359. See, also, 16 Am. Jur. 322.

*Riter, Cowan, Henriod & Finlinson,* Salt Lake City, for appellants.

*Clinton D. Vernon, Atty. Gen., Bryce E. Roe, Asst. Atty. Gen., J. Lambert Gibson, A. M. Ferro,* Salt Lake City, for respondent.

LATIMER, Justice.

Plaintiffs commenced this action for a declaratory judgment seeking to determine the right of defendant to the use of $20,000 from the State Uniform School Fund. Upon motion of the defendant, the trial judge dismissed the complaint with prejudice, and from that dismissal plaintiffs appeal. The parties are referred to herein as they appeared in the court below.

In their complaint plaintiffs alleged generally that the 28th Legislature of Utah, on March 10, 1949, appropriated the amount of $20,000 to the Superintendent of Public Instruction from the Uniform School Fund for Uniform School Fund Research; that on March 19, 1949, the Governor vetoed this item, giving as his reason therefor that the administration appropriation for the department should be ample to provide for the work covered by the proposed appropriation; that plaintiffs are taxpayers of Utah, and as such are contributors to and interested in the Uniform School Fund; that the defendant is the duly elected and

acting Superintendent of Public Instruction of the State of Utah; that plaintiffs are informed and have reason to believe that defendant has claimed the right to the use of the funds and that he has requested and demanded the delivery of such funds to him on the ground that the Governor's veto of the appropriation was invalid; and that his demands involve the availability or nonavailability of $20,000 of taxpayers' funds. The gravamen of plaintiffs' complaint is contained in the following quote from their complaint:

"That defendant has publicly stated and indicated that the validity of said veto should be tested in the courts, and has indicated that he will employ counsel for such purpose, all of which, together with defendant's demand for delivery and use of said funds involves the availability or non-availability of $20,000.00 of taxpayers' funds, and represents a controversy of public interest which requires a declaration of rights as between defendant and plaintiffs under the provisions of Title 104—64, Utah Code Annotated, 1943, and the subdivisions thereof."

Defendant's motion for dismissal was based upon the grounds that there was a non-joinder of indispensable parties and that the complaint failed to state a cause of action against defendant upon which relief could be granted.

On this appeal plaintiffs contend that the lower court erred in determining that they are not proper parties to maintain this action; that the court further erred in dismissing the complaint with prejudice; and that the Governor's veto of the proposed appropriation should be sustained.

The trial judge set out two reasons in his judgment of dismissal as the basis for his ruling on the motion to dismiss: First, that plaintiffs have no interest in the controversy; and second, that there is an adequate remedy at law available to those who have custody of the funds and who believe the Governor's veto should be sustained. We are of the opinion that the existence of an adequate remedy at law, available to other parties, would not of itself be sufficient grounds for dismissing the complaint if plaintiffs

had a standing in court. But, in view of our decision on the first contention, it is unnecessary for us to discuss or resolve the second.

While the statutes authorizing courts to render declaratory relief should be liberally construed in order to provide prompt settlements of controversies and to stabilize uncertain legal relations, courts, nevertheless, must operate within the constitutional and statutory powers and duties imposed upon them. They are not supposed to be a forum for hearing academic contentions or rendering advisory opinions. In order to maintain an action for declaratory relief, plaintiffs must show that the justiciable and jurisdictional elements requisite in ordinary actions are present, and a judgment can be rendered only in a real controversy between adverse parties. Generally, courts have held that the conditions which must exist before a declaratory judgment action can be maintained are: (1) a justiciable controversy; (2) the interests of the parties must be adverse; (3) the party seeking such relief must have a legally protectible interest in the controversy; and (4) the issues between the parties involved must be ripe for judicial determination.

The type of justiciable controversy which must exist before declaratory relief can be granted is defined in Section 8, on page 27, *Anderson, Declaratory Judgments,* as follows:

"A controversy, in the sense in which the word is used in the Constitution in defining judicial power, particularly of the Federal Courts, must be one that is appropriate for judicial determination as distinct from a difference or dispute of hypothetical or abstract character or from one which is academic or moot, but must be definite and concrete, touching the legal relation of the parties in adverse legal interest, and must be a real and substantial controversy admitting of specific relief through a decree conclusive in character as distinct from an opinion or advice of what the law would be on a hypothetical state of facts."

Applying the definition to the facts alleged in the present case, it becomes apparent that the question of the validity

of the Governor's veto presents an "actual" or "justiciable" controversy. The complaint contains allegations concerning the veto of the item in the appropriation ▮ bill and that the defendant has requested and demanded the delivery and use of the funds involved. His right to the use of such funds after a gubernatorial veto is at least questionable, and his alleged demand and threat to institute legal proceedings suggests that the seeds of a controversy have ripened. Thus, the first condition requisite for the granting of declaratory relief is present.

In view of the fact that the other three conditions blend together and that the reasons controlling one influence the remaining two, we consolidate them for purposes of discussion.

Section 104—64—2, U. C. A. 1943, sets forth the interests which must be possessed by plaintiffs in order to entitle them to maintain an action for a declaratory judgment. It provides as follows:

*"Any person* interested under a deed, will or written contract, or *whose rights, status or other legal relations are affected by a statute,* municipal ordinance, contract or franchise, *may have determined any question of construction or validity arising under the* instrument, *statute,* ordinance, contract or franchise, *and obtain a declaration of rights, status or other legal relations thereunder."* (Emphasis added.)

Plaintiffs first contend that their interest as taxpayers is sufficient to establish that their rights or legal relations are affected and that they have a legally protectible interest in the controversy. In support of this contention they cite the annotation in 174 A. L. R. 549, which contains the following statement on page 555:

"A taxpayer is generally deemed to have a sufficient interest to obtain a declaratory determination as to the validity of statutes or ordinances under which public authorities will proceed to levy taxes or make expenditures of public money."

We need not consider whether this general rule has been adopted by previous decisions of this court as plaintiffs

do not seek a determination as to the constitutionality or validity of a statute. What they appear to seek is a declaration as to the legal effect of a claimed veto by the Governor. The question thus posed is whether a plaintiff, who alleges only an interest as a taxpayer, can question acts of the legislative or executive officials prior to the time any pecuniary detriment could arise.

To what extent a taxpayer may interfere with the ordinary processes of government and resist the acts of state officers has posed a problem not easy of solution. On the one hand, a taxpayer should be permitted to enjoin the unlawful expenditure of tax moneys in which he has a pecuniary interest, or to prevent increased levies for illegal purposes. On the other hand, he should not be able to meddle in the internal affairs of the state department to such an extent that every official act can be questioned, hindered and delayed. Generally speaking, the various state departments should be answerable to taxpayers when a direct, definite and illegal injury is threatened, but not so until it appears that injury is more than a future possibility. Here we have not yet reached the state of a threatened expenditure, we are only concerned with an alleged dispute as to defendant's right to claim the money as available to his department.

Our research has indicated that the federal courts and a few of the state courts have refused to permit taxpayers to question the execution of an appropriation act on the grounds that it is invalid or unconstitutional and will result in taxation for illegal purposes. The federal rule is pronounced in the cases of *Commonwealth of Massachusetts* v. *Mellon,* and *Frothingham* v. *Mellon,* (in one opinion), 262 U. S. 447, 43 S. Ct. 597, 601, 67 L. Ed. 1078, in the following language:

"The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a

matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained."

The state courts which follow the federal rule announce substantially the same principle. We quote from the case of *Asplund* v. *Hannett,* 31 N. M. 641, 249 P. 1074, 1082, 58 A. L. R. 573, to illustrate the state holdings:

"It is true that there is an analogy between the state and a municipal corporation, and an analogy between a municipal corporation and a private corporation. Hence, on the mathematical principle that things equal to the same thing are equal to each other, a number of courts have concluded that the rule applied to municipal corporations should be applied to the state. They overlooked the dual nature of municipal corporations as agencies of sovereignty and as business corporations. The analogy between them and private corporations appears only as we view them in their business and property-owning capacity. When viewed as repositories of sovereign power, the analogy ceases. But the analogy is the foundation supporting the doctrine of taxpayers' suits. We have not been accustomed to recognize any such dual nature of the state. Its business is conducted in its sovereign capacity. The bridge which joins the private corporation and the municipal corporation, and enables the taxpayer to make that crossing, breaks down between the municipal corporation and the state.

"Not having found any legal or logical principle to support a taxpayer's suit to enjoin the expenditure of state funds, we are constrained to hold that he has no such right in this state. We hold to this view notwithstanding the contrary conclusion of eminent judges and able courts, and an apparently increasing tendency to admit the right."

Without enumerating the jurisdictions which have adopted the view that a taxpayer may maintain a suit to prevent illegal expenditures, we quote from the case of *Beauchamp, County Judge,* v. *Silk,* 275 Ky. 91, 120 S. W. 2d 765, 766, as it aptly states the reason for adopting that principle:

"In support of the objection to plaintiff's right to maintain the action defendants' counsel cite and rely on a number of cases wherein the particular plaintiff therein possessed no legal right to maintain the action and he was adjudged to be disqualified to make the contentions and to

obtain the relief sought in and by his petition. But in each and every one of them plaintiff exhibited no pecuniary or other interest in the subject matter of the litigation, and it was consequently held by this court that he had no standing in court as a contender for the relief he sought. However, we have uniformly held that in cases of this kind involving an attack upon a public expending measure—or contemplated act by some official and to carry out which involved the expenditure of public funds raised by taxation —a single taxpayer within the affected territory might maintain an action questioning the validity of what the statute required, or what the official was threatening to do, upon the ground that the statute so attacked, or the step proposed to be taken by the officer was unauthorized and would involve the illegal and wrongful expenditure of public funds."

This court has assumed that an affected taxpayer may maintain an action to question an appropriation under an unconstitutional statute and we believe this to be the better rule when a pecuniary interest has been established. See *Thomas* v. *Daughters of Utah Pioneers,* 114 Utah 108, 197 P. 2d 477.

In adopting the rule that a taxpayer may maintain an action to stay the administration of an appropriate measure, the various courts have always required an allegation and a showing that the taxpayer is subject to some pecuniary loss. Suggestive of this principle is the quote taken from *Fergus* v. *Russel,* 270 Ill. 304, 110 N. E. 130, 135:

"We have repeatedly held that taxpayers may resort to a court of equity to prevent the misapplication of public funds, and that this right is based upon the taxpayers' equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation. *Colton* v. *Hanchett,* 13 Ill. 615; *Perry* v. *Kinnear,* 42 Ill. 160; *Chestnutwood* v. *Hood,* 68 Ill. 132; *Jackson* v. *Norris,* 72 Ill. 364; *McCord* v. *Pike,* 121 Ill. 288, 12 N. E. 259, 2 Am. St. Rep. 85; *Littler* v. *Jayne,* 124 Ill. 123, 16 N. E. 374; *Stevens* v. *St. Mary's Training School,* 144 Ill. 336, 32 N. E. 962, 18 L. R. A. 832, 36 Am. St. Rep. 438; *City of Chicago* v. *Nichols,* 177 Ill. 97, 52 N. E. 359; *Adams* v. *Brenan,* 177 Ill. 194, 52 N. E. 314, 42 L. R. A. 718, 69 Am. St. Rep. 222; *Burke* v. *Snively,* 208 Ill. 328, 70 N. E. 327; *Jones* v. *O'Connell,* 266 Ill. 443, 107 N. E. 731."

In determining whether these plaintiffs have such a pecuniary interest as will permit them to state a cause of action we first look at the nature of this so-called controversy. The attack alleged is not that the expenditures,

if made, will be for unlawful or illegal purposes, but rather for legitimate state services. In all of the cases cited, it will be noted there was illegality in the purpose of the appropriation, not irregularities in the manner of making the money available. The allegations of the complaint cannot be construed so as to imply that if the defendant obtains the moneys he has an intent to use them for unconstitutional or illegal purposes. Unquestionably the expenditure of tax funds has an indirect and remote impact upon each taxpayer who contributes to the fund but he cannot complain if the tax load is increased by spending for essential state functions. It may well be that we can conjure up some remote effect upon the plaintiffs if the defendant obtained the money illegally, expended it without proper authority, and thereby increased the tax burden of all taxpayers. But, from the facts alleged, the controversy over the right to the use of the money has not reached the stage where plaintiffs can either allege or prove impairment of any pecuniary interest.

Presently there is no contention made, and from the facts alleged it cannot be inferred, that the money will ever be made available to the defendant. There are other state officers in state departments who must first act before the money is made available. We must assume that the appropriate state officers will comply with what they believe to be the law and if any believe the defendant does not have the right to the funds then a justiciable controversy may arise between them. But plaintiffs are not entitled to a declaratory judgment by the court to advise state officers as to their appropriate duties. A stranger to a controversy is not entitled to precipitate a law suit to question the right of a third party to resort to the courts. If the state officers, charged with the responsibility that only properly appropriated money is available for use, have concluded (and this seems to be the fair import of the complaint) that the funds are not avail-

able to be expended, then the defendant cannot use them, and the plaintiffs have not been injured. The alleged situation merely shows that the defendant contemplates instituting a suit, and if soo, the matter would be determined between the interested state departments in a direct suit and in an appropriate manner. If the veto is held invalid by the courts, then plaintiffs' pecuniary interest, if any, could not have been affected as the judgment would establish the validity of the appropriation. If the veto is sustained by the court, then the money is not available and plaintiffs cannot be injured. Any pecuniary interest they might claim is contingent upon and will be determined by the procedure contemplated by defendant.

Plaintiffs' allegation that the controversy involves a question of public importance does not assist them. Ordinarily, a person having only such interest as the public generally has in the validity of an appropriation does not have the necessary interest to entitle him to maintain an action for a declaratory judgment as to the legality of the appropriation, regardless of the public importance of the question. His right to maintain the suit is based on the detriment he will suffer, not on the assumed interest of the public.

One of the vices of permitting taxpayers to institute this type of action is well illustrated by the present litigation where the defendant, an elected public officer, is called into court by strangers because he believes and has publicly stated he is entitled to the use of certain moneys appropriated by the legislature. There being some question about its availability, the only legal means he had of determining the matter was by judicial determination. This is the only step he has proposed taking. For some fifteen months his department has been kept in doubt and uncertainty, and, for all practical purposes, the will of both the executive and legislative departments has been thwarted. Before interested state officers and the necessary parties

to an action can have the controversy settled the biennium will have passed and the money will no longer be available. The Governor, the Legislature and the Department of Education do not disagree on the advisability of the research work. The only question involved was the fund from which the money should be obtained. The School Fund is made up from many sources, some of which do not concern the plaintiffs, so that even if the money were being expended their pecuniary interest, at most, would be infinitesimal. We believe the departments of the state should be first given a fair opportunity to settle their differences before being harassed by litigants who seek to have the courts render advisory judgments prematurely.

The judgment is affirmed, costs to respondent.

WOLFE, C. J., and McDONOUGH, WADE, and CROCKETT, JJ., concur.